IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WESTERN RADIO SERVICES CO.,
INC.,

    Plaintiff,

v.

CENTURYTEL OF EASTERN OREGON,
INC., and OREGON PUBLIC
UTILITIES CORPORATION (PUC),

    Defendants.

Civ. No. 09-6315-AA
OPINION AND ORDER

Marianne Dugan
259 E. 5th Ave., Suite 200-D
Eugene, OR 97401
    Attorney for plaintiff

Richard A. Finnigan
2112 Black Lake Blvd. SW
Olympia, WA 98512
    Attorney for defendant CenturyTel

John R. Kroger
Attorney General
Michael T. Weirich
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301
    Attorneys for defendant PUC

1   - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Western Radio Services Co. (Western) filed suit seeking declaratory and injunctive relief and damages under the Telecommunications Act of 1996 (the Act). See 47 U.S.C. § 151, et seq. Defendants moved to dismiss Western's claims for lack of subject matter jurisdiction and failure to state a claim, and the court granted the motion as to Western's claims against CenturyTel of Eastern Oregon, Inc. (CenturyTel) and narrowed Western's claim against the Public Utility Commission of Oregon (the PUC).[1] All parties now move for summary judgment on Western's remaining claim. Western's motion is denied, and defendants' motions are granted.

BACKGROUND

Western is an Oregon corporation authorized to provide wireless telecommunication services in Oregon. CenturyTel is a telecommunications utility in Eastern Oregon. The PUC is a state agency charged with regulating the intrastate operations of telecommunications carriers.

As an incumbent local exchange carrier, CenturyTel must negotiate access, or "interconnection," with competitive local exchange carriers such as Western. 47 U.S.C. § 251(c)(1),(2); see also 47 C.F.R. § 51.5 (defining interconnection as "the linking of two networks for the mutual exchange of traffic"). According to Western, it and CenturyTel have had an informal "bill and keep"

---

[1]In the caption of its First Amended Complaint, Western identifies the PUC as the "Oregon Public Utilities Corporation."

2  - OPINION AND ORDER

interconnection arrangement and have "regularly and routinely exchang[e] traffic over interconnection facilities." First Am. Compl, p. 5. Western maintains that despite this arrangement, CenturyTel billed Western for certain services and ultimately issued disconnect notices to Western after the charges were disputed.

On June 16, 2008, Western filed a "bone fide request" for an interconnection agreement with the PUC to obtain access to CenturyTel's telecommunications network and facilities. Western also asked that CenturyTel continue processing its interconnection orders in the interim while the parties negotiated an agreement. According to Western, CenturyTel refused and indicated that it would not process interconnection orders without a fully negotiated and approved interconnection agreement. See 47 U.S.C. § 252(e)(1) (state utility commission must approve interconnection agreements adopted by negotiation or arbitration).

On November 21, 2008, Western filed a petition for arbitration with the PUC. Administrative Record (AR), pp. 64-94; see 47 U.S.C. § 252(b)(1) (If the parties cannot agree on the terms of an interconnection agreement, they may petition the state commission to "arbitrate any open issues"). Western asserted that CenturyTel failed to negotiate in good faith and proposed an interconnection agreement for consideration by the PUC. In response, CenturyTel offered a competing interconnection agreement. AR, pp. 100-176. The PUC designated the petition as "ARB 864" and assigned a

3   - OPINION AND ORDER

presiding administrative law judge (ALJ). See Or. Admin. R. 860-016-0030.

The ALJ questioned the sufficiency of Western's arbitration petition under the Act and the PUC's rules and certified the issue to the PUC. AR, pp. 193-94. The PUC concluded Western's petition was insufficient in the following respects:

> By Western's own admission, Western's Petition for Arbitration does not set forth all of the unresolved issues between the parties, nor does it state either party's positions on the unresolved issues. Western's Petition for Arbitration also does not elucidate what issues have been discussed and resolved by the parties. . . . Western simply fails to present any issues that we may consider.

AR, p. 244. The PUC allowed Western the opportunity to correct the deficiencies in its petition and identify "1) the unresolved issues; and 2) the positions of Western and CenturyTel on each unresolved issue." AR, p. 245. After Western's petition for arbitration was dismissed, the ALJ denied Western's motion/complaint seeking injunctive relief against Century, because the motion was based, "[b]y Western's own admission," "upon the existence of a viable petition for arbitration." AR, p. 253; see also AR, pp. 182-92.

Rather than file a new arbitration petition as advised by the PUC, Western sought reconsideration of the dismissals of its arbitration petition and motion/complaint. AR, pp. 257-86. The PUC denied Western's untimely request for reconsideration and reaffirmed dismissal of Western's petition. AR, pp. 372-73.

4    - OPINION AND ORDER

Nonetheless, the PUC allowed Western to present argument as to whether the PUC can enforce the terms of an informal interconnection "arrangement" preceding an approved interconnection agreement and whether a rural telecommunications carrier such as CenturyTel may voluntarily waive the rural exemption under 47 U.S.C. § 251(f) without terminating the exemption. AR, p. 374. The PUC ultimately concluded that it had no authority to enforce an informal interconnection arrangement, and that CenturyTel could waive or partially waive the rural exemption during the negotiation of an interconnection agreement with Western. AR, p. 432.

On November 10, 2009, Western filed this action. During the pendency of this case, CenturyTel's parent company, CenturyLink, entered into an agreement to acquire Qwest Communications International Inc. (Qwest) and requested regulatory approval of the transaction. CenturyLink committed to the FCC that its rural telephone companies, including CenturyTel, will not assert the rural exemption when negotiating interconnection requests. The FCC accepted this commitment in granting its approval of CenturyLink's request to acquire Qwest. See CenturyTel's Reply Brief (doc. 55), Ex. 1.

## DISCUSSION

In a previous ruling, I granted CenturyTel's motion to dismiss on prudential and jurisdictional grounds, because the PUC had not rendered a final determination regarding an interconnection

5    - OPINION AND ORDER

agreement between the Western and Century Tel.[2]  See Opinion and Order, pp. 6-9 (Nov. 1, 2010).  Remaining is Western's Fifth Cause of Action alleging that the PUC violated its delegated authority by finding 1) that the PUC lacks authority to enforce the terms of an informal interconnection "arrangement" that precedes an approved interconnection agreement, and 2) that CenturyTel may voluntarily and partially waive the rural exemption when negotiating with Western.[3]  CenturyTel and the PUC move for summary judgment on this claim, arguing that CenturyTel's waiver of the rural exemption is now moot or was correct, and that the PUC correctly determined that it had no authority to enforce an informal interconnection arrangement.  Western likewise moves for summary judgment.

A.  Voluntary Waiver of the Rural Exemption

Under 47 U.S.C. § 251(f), incumbent local exchange carriers that meet the definition of a rural telephone company hold an exemption from the requirements of 47 U.S.C. § 251(c) (the rural exemption).  CenturyTel previously agreed before the PUC that it

---

[2]In its First through Four Causes of Action, Western alleged that CenturyTel: 1) refused to negotiate an interconnection agreement in good faith; 2) restricted Western's interim interconnection by refusing to negotiate an interconnection agreement; 3) failed to provide interim interconnection services; and 4) charged Western inappropriate tariff rates for interconnection services.  First Am. Compl., pp. 15-19.

[3]Western had also challenged the PUC's dismissal of its petition for arbitration and "motion and complaint" for an injunction against CenturyTel.  This portion of Western's claim was dismissed in my prior ruling.  See Opinion and Order, pp. 9, 10-11 (Nov. 1, 2010).

would not rely upon the rural exemption with respect to the obligations under § 251(c)(1) and (2) when negotiation an interconnection agreement with Western. See AR, pp. 386-387. Given that § 251(c) includes six separate obligations, CenturyTel's agreement was a partial waiver of the rural exemption. 47 U.S.C. § 251(c)(1)-(6). Western argues that a rural carrier may not voluntarily or partially waive its rural exemption and that the PUC must conduct an investigation to determine whether CenturyTel's rural exemption should be "terminated." See id. § 251(f)(1)(B). I agree with the PUC and CenturyTel that this issue has been rendered moot by CenturyLink's subsequent agreement with the FCC.

Importantly, the issue before this court is whether the PUC erred in finding that CenturyTel could waive its rural exemption during negotiation of an interconnection agreement with Western without triggering the termination review process. Based on CenturyLink's commitment to and agreement with the FCC, CenturyTel now cannot assert the rural exemption under § 251(f)(1) to avoid any of its obligations under § 251(c). Thus, whether CenturyTel may invoke a partial waiver of its rural exemption when negotiating with Western is now moot, as assertion of the exemption will not occur. Los Angeles County v. Davis, 440 U.S. 625, 631 (1979).

Regardless, even if the issue was not moot, the PUC did not err in finding that a rural carrier may waive or partially waive the rural exemption without triggering the termination process. The PUC found:

7    - OPINION AND ORDER

> [T]he section 251(f)(1)(B) process to terminate a rural exemption begins when a bona fide request for interconnection is filed by a telecommunication carrier *after* a rural carrier either declines to begin negotiation or explicitly exerts the rural exemption to preclude negotiation. We thereby agree with other state commissions that a rural carrier may waive its exemption by not exerting the exemption to begin negotiations with another carrier.

AR, pp. 428-29 (citing AT&T Communications of the Midwest, Inc., Docket P-442, 407/M-96-939 (Minn. P.U.C. Mar. 5, 1997) and GTE Northwest, Inc., Docket UT-960324 (Wash. U.T.C. Dec. 11, 1996)); see also AR, p. 429 (citing In the Matter of Petition of Sprint Communications LP for Arbitration with Randolph Telephone Company, 2007 WL 1813645 at *7 (N.C.U.C. 2007)).

I find that the PUC's interpretation is consistent with the language of § 251(f)(1), which requires the "State commission [to] conduct an inquiry for the purpose of determining whether to terminate the exemption" after a "party making a bona fide request of a rural telephone company for interconnection, services, or network elements [submits] a notice of its request to the State commission." 47 U.S.C. § 251(f)(1)(B). Within 120 days, "the State commission shall terminate the exemption if the [interconnection] request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 of this title." Id. Hence, if a telecommunications carrier does not exert the rural exemption in response to a interconnection request, there is no need to determine whether the interconnection request

8   - OPINION AND ORDER

warrants termination of the exemption.

Morever, implicit in the acceptance of CenturyLink's commitments is the FCC's recognition and approval of a telecommunications carrier's ability to "waive" the rural exemption. As noted by the PUC, "a commitment not to assert the rural exemption is essentially identical to a 'waiver' of the exemption." PUC's Reply, p. 3. Notably, the FCC did not reject CenturyLink's proposed commitment or require formal termination proceedings under § 251(f)(1)(B).

In sum, I find no basis for Western's position that a telecommunications carrier cannot waive or partially waive its rural exemption without formal termination of the exemption.

B. <u>Authority to Enforce an Informal Interconnection Arrangement</u>

Western next asserts the PUC erred when it concluded that it did not have authority under the Act or state law to enforce an informal interconnection "arrangement," such as the arrangement between Western and CenturyTel, that precedes a formal interconnection agreement. However, Western cites no authority under which the PUC may issue an injunction to enforce an informal interconnection arrangement. Rather, Western asserts that the question is proper for federal court review and urges the court to order the PUC to enforcement the terms of Western and CenturyTel's informal arrangement. The issue, however, is whether the PUC has the authority to enforce informal arrangements between telecommunication carriers pursuant to the Act.

9   - OPINION AND ORDER

Under the Act, a state commission may: 1) review negotiated agreements for approval or rejection; 2) mediate disputes arising out of negotiations over such agreements; 3) arbitrate agreements when negotiations fail; and 4) arbitrate disputes over the terms of an approved interconnection agreement. See 47 U.S.C. § 252(a)-(e). Western fails to cite any provision of the Act that grants the PUC authority to enforce informal interconnection arrangements created "via a procedure that bypasses the Act entirely and ignores the procedures and standards that Congress has established". MCI Telecomm. Corp. v. GTE Nw., Inc., 41 F. Supp. 2d 1157, 1178 (D. Or. 1999).

Western also cites to various statutes administered by the PUC, and PUC rules adopted pursuant to those statutes, as support for its position that the PUC has authority to issue an injunction to enforce an informal interconnection arrangement. However, the state statutes which the PUC administers grant it no authority to enforce federal telecommunications law regarding interconnection. Or. Rev. Stat. §§ 756.160(1), 756.180(1), 756.500(1). Rather, these statues are limited to the enforcement of state and municipal laws that the PUC is authorized to administer. Likewise, the administrative rule cited by Western governs enforcement of an approved interconnection agreement. See Or. Admin. R. 860-016-0050(1). Thus, the PUC did not err in finding that it had no authority to enforce an informal arrangement between CenturyTel and Western.

10   - OPINION AND ORDER

CONCLUSION

Western's Motion for Summary Judgment (doc. 40) is DENIED, and the PUC's and CenturyTel's motions for summary judgment (docs. 43, 46) are GRANTED.  CenturyTel's Motion to Strike is DENIED as moot. IT IS SO ORDERED.

Dated this 15th day of July, 2011.

_____
Ann Aiken
United States District Judge

11   - OPINION AND ORDER